■ In the Matter of ROBERT W. PREUSCH, Petitioner, v UNIVERSITY OF THE STATE OF NEW YORK, STATE EDUCATION DEPARTMENT, Respondent.—Main, J. Proceeding pursuant to CPLR article 78 (initiated in this court pursuant to Education Law § 6510 [5]) to annul a determination of the Commissioner of Education which revoked petitioner's certificate to practice as a certified public accountant in New York State.

Petitioner was licensed in this State to practice public accountancy and was a partner in the firm of Richards, Ganly, Fries & Preusch (hereinafter the firm). In 1981, petitioner was

charged with three specifications of professional misconduct, which alleged that he (1) practiced the profession fraudulently under Education Law § 6509 (2) by arranging and inducing loans of client funds to businesses in which he and the firm were interested but which were known to be in financial distress; (2) committed unprofessional conduct under Education Law § 6509 (9) and 8 NYCRR 29.10 (a) (5) by expressing an independent opinion on financial statements of an enterprise while not being independent with respect thereto and otherwise being involved in conflicts of interest; and (3) committed unprofessional conduct under Education Law § 6509 (9) and 8 NYCRR 29.1 (b) (5) by engaging in conduct in the practice of public accountancy which demonstrated moral unfitness to so practice. These charges arose from a series of loans arranged by petitioner while he was serving as corporate treasurer of the New York Annual Conference of the United Methodist Church (Conference) between 1968 and 1973. These loans evidently went bad and caused the Conference to suffer extensive losses. Apparently, civil litigation concerning these losses lasted from 1974 to 1979 when a settlement was reached, whereby the insurance companies of petitioner and the firm paid the Conference approximately $1,000,000.

Following a hearing, the hearing panel found petitioner guilty of all charges and recommended that his certificate to practice as a certified public accountant be revoked. The Regents Review Committee recommended adoption of the hearing panel's report. The Board of Regents adopted the report and ordered that petitioner's certificate and registration be revoked. To challenge this determination, petitioner commenced this proceeding pursuant to Education Law § 6510 (5).

Initially, we reject petitioner's claim that respondent was guilty of laches in pursuing this disciplinary proceeding. Although the alleged misconduct occurred in 1968 through 1973 and the charges were not brought until 1981, there is nothing in the record to indicate that the service of the charges was delayed, that respondent acted improperly in pursuing this matter or that petitioner was prejudiced.

We next reject petitioner's claim that the first and third specifications should be dismissed because the allegations therein do not encompass activities constituting the practice of public accountancy. In so arguing, petitioner urges an extremely narrow construction of the scope of the practice of public accountancy. To the contrary, the statutory definition

of the practice of public accountancy does not imply such a restrictive interpretation. Education Law § 7401 defines the practice of public accountancy as: "holding one's self out to the public, in consideration of compensation received or to be received, offering to perform or performing for other persons, services which involve signing, delivering or issuing or causing to be signed, delivered or issued *any financial, accounting or related statement* or any opinion on, report on, or certificate to such statement *if, by reason of the* signature, or the stationery or *wording employed, or otherwise, it is indicated or implied that the practitioner has acted or is acting,* in relation to said financial, accounting or related statement, or reporting as an independent accountant or auditor or *as an individual having or purporting to have expert knowledge in accounting or auditing"* (emphasis supplied). The record reveals that the Conference paid the firm $30,000 per year from 1968 to 1973 for the services of petitioner and the firm. These services included the preparation of summary statements of investments, fund income statements, balance sheets and statements of anticipated income from investments. Indeed, petitioner admitted during a deposition that the firm provided "[F]ull accounting and bookkeeping for all of the transactions of the Conference Board of Trustees". The record further reveals that the Conference relied on petitioner's expertise as an accountant. We are satisfied that these facts demonstrate that petitioner was issuing financial, accounting or related statements which indicated that he was acting as one with expert knowledge in accounting and, thus, was engaged in the practice of public accountancy for the purposes of the first and third specifications.

We next conclude that the determination is supported by substantial evidence. The record reveals that. petitioner who had been approached by the Conference concerning its desire to increase yields on Conference investments, suggested making loans to companies which, he disclosed, were clients of the firm. Although petitioner indicated that these loans would be at limited or little risk, he failed to disclose that his firm's audit of one company showed losses over several years and that another company had recently been in bankruptcy. Petitioner also failed to disclose that one company had recently mortgaged substantially all of its assets. Moreover, the record indicates that petitioner, in March 1972, obtained a report *from* independent auditors detailing the poor financial condition of the companies to which loans had been made, but that he failed to disclose this report to the Conference until May

1973, and even informed the Conference's board of trustees in December 1972 that there were no problems with the loans. Furthermore, although there is dispute over the extent of petitioner's authority to loan Conference funds, it appears that petitioner was authorized to loan $1,095,000 but had in fact loaned, as of the end of 1972, $5,239,716. These facts support the determinations that petitioner's misconduct rose to the level of fraud and that his conduct evidenced moral unfitness to practice the profession.

As already noted, there is evidence that petitioner and the firm had performed services for companies to which the Conference had made loans. Also, the record reveals that petitioner failed to disclose to the Conference that he and his partners had other personal financial interests in these companies. For example, petitioner served as a member of the board of directors of certain companies and made personal loans to companies. These conflicts compromised the independent opinions of petitioner and the firm. Thus, considering the record as a whole, we do not hesitate to conclude that there is substantial evidence to support the charges and determination thereon.

Finally, we cannot say that the penalty of revocation of petitioner's license and registration to practice as a certified public accountant requires modification. Considering the transgressions alleged and proved, revocation of petitioner's license and registration does not shock our judicial conscience and, accordingly, the sanction need not be modified (see, *Matter of Pell v Board of Educ.,* 34 NY2d 222).

Determination confirmed, and petition dismissed, without costs. Mahoney, P. J., Main, Mikoll, Yesawich, Jr., and Harvey, JJ., concur.